COOLIDGE, Respondent, vs. LA CROSSE CITY RAILWAY COMPANY, Appellant.

*September 10—September 29, 1908.*

*Street railways: Injury to passenger: Negligent handling of trolley rope: Custom.*

While on the rear platform of one of defendant's street cars and about to descend the steps, plaintiff was struck in the eye by the end of the rope attached to the trolley pole, which the conductor had thrown with one hand from the center window of the vestibule around to the side entrance thereof, intending to catch it with his other hand as it swung around. *Held* that, notwithstanding any practice or custom in vogue among defendant's employees, the jury were warranted in finding that there was a negligent handling of the rope, that the plaintiff's injury was the natural and probable consequence of the negligent act, and that a person of ordinary care ought to have foreseen that some injury would be likely to result therefrom.

APPEAL from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed.*

This action is brought to recover damages for the loss of an eye, alleged to have been caused by the actionable negligence of defendant, which operates a street railway in the city of La Crosse. The plaintiff was a passenger on one of the defendant's cars and desired to leave the same at the end of its journey. While plaintiff was on the rear platform and about to descend from the car he was struck in the eye by the end of the trolley rope, and it is claimed that the blow thus received resulted in the loss of his right eye. It appeared that the car in question was of the ordinary kind with a vestibuled platform at each end. On arriving at the end of its route the direction of the car was reversed by releasing the trolley from the wire and swinging it around and bringing it in contact again with the wire above the other end of the car. This was done by means of a rope, one end of which was fastened to the trolley pole. There was a loop bound with wire on the other end, which was passed through the window in the center of the vestibule and hung on a hook on the inside. In swinging the trolley it appeared that the defendant's employees sometimes disengaged the rope from the hook and dropped it through the vestibule window, so that they were obliged to leave the car in order to get hold of it to swing the pole. It also appeared that conductors were in the habit of catching the rope some distance from the loop, extending one hand through the window of the vestibule, swinging the rope around the side of the vestibule, and catching it with the disengaged hand. It seems to be conceded that the distance that the rope would have to pass was so great that the conductor could not reach through the center vestibule window and pass the rope around so as to catch the other end without swinging or throwing it. At the time in question the conductor attempted to pass the looped end of the trolley pole rope through the window in the center of the vestibule around to the side entrance by swinging or throwing the rope with one hand and catching the looped end

with the other.    As plaintiff was on the platform of the vestibule and about to descend from the car the looped end of the rope, thrown by the conductor, struck him in the eye.    The eye became swollen and inflamed and plaintiff has lost the use of the same.    About two years prior to this time plaintiff lost his other eye through an accident and he is now totally blind.

The jury found: (1) That the defendant was guilty of negligence which caused the injury to and loss of the sight of the plaintiff's right eye.    (2) That the injury to the plaintiff was the natural and probable consequence of defendant's negligence.    (3) That in the light of attending circumstances a person of ordinary care ought to have foreseen that some injury would be likely to result from such negligence. (4) That the injury to the plaintiff was not the result of an accident without negligence of either party.    (5) That the plaintiff was entitled to recover damages to the amount of $10,000.    Judgment was rendered on this verdict for the plaintiff.    From such judgment defendant brings this appeal.

For the appellant there was a brief by *Woodward & Lees,* and oral argument by *G. M. Woodward.*

For the respondent there was a brief by *Higbee & Higbee,* and oral argument by *E. C. Higbee.*

Barnes, J.    Defendant assigns as error: (1) Failure of the court to direct a verdict in its favor; (2, 3, 4) refusal to change the answers to the first, second, and third questions in the special verdict from "Yes" to "No," and (5) refusal to enter judgment for defendant on the verdict as so amended.    Substantially the same reasons are urged in support of defendant's motion for a directed verdict as are urged for modifying the special verdict so as to entitle the defendant to judgment thereon.

The defendant's contentions are: (1) The trolley rope was

not handled in a negligent manner. (2) The injury was not the natural and probable consequence of the act. (3) A person exercising ordinary care ought not to have foreseen that some injury would be likely to result from defendant's alleged negligent act, considered in the light of attending circumstances.

The jury found all these disputed questions of fact in favor of the plaintiff, and we think it was fairly within its province, on the evidence before it, so to do. The rope in question was about one quarter of an inch in diameter, or perhaps more. There was a loop on the end of it fastened by wire. To "swing," "pass," or "toss" this rope (using the words of the conductor in describing what he did) in such a manner that the looped end of it was liable to come in contact with passengers' eyes as they were leaving cars seems to us to clearly warrant the jury in finding that there was a negligent handling of the rope, notwithstanding any practice or custom that was in vogue. If the employees of the defendant chose to take this method instead of the safe one of dropping the rope out of the vestibule window and then walking around the end of the car and securing it, it should not have been practiced while passengers were alighting from cars. It is true that the blow, if such it might be called, was not attended with any great degree of violence. It is none the less true that the eye is an extremely sensitive organ and that a comparatively slight blow upon the eyeball may produce serious consequences, and it would be rather hard to escape the conclusion that the swinging of the rope in such a manner that the looped end of it might well come in contact with the eyes of passengers was a negligent act on the part of the conductor.

So, too, we think it was for the jury to say, upon the testimony offered, whether or not the injury was the natural and probable consequence of the defendant's negligence. The evidence is ample to warrant the conclusion of the jury.

The same may be said of the finding of the jury to the effect that, in the light of attending circumstances, a person of ordinary care should have foreseen that some injury would be likely to result from defendant's negligent act. The case before us is very similar to that of *McQuade v. The Golden Rule* (Minn.) 117 N. W. 484, in which a judgment for the plaintiff was sustained. There is no error in the record.

*By the Court.*—Judgment affirmed.